# IN THE COURT OF COMMON PLEAS
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| SAANCHEZ WEST<br>1752 Bising Ave., Apt. 1<br>Cincinnati, OH 45239 | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| TRIHEALTH HOSPITAL, INC.<br>625 Eden Park Drive<br>Cincinnati, OH 45202 | ) ) ) ) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve Also:**<br>TriHealth Hospital, Inc.<br>c/o Filejet Inc. (Stat. Agent)<br>1201 Dublin Road #609<br>Columbus, OH 43125 | ) ) ) ) ) ) ) | |
| **-and-** | ) ) | |
| MICHAEL JUDGE<br>c/o TriHealth Hospital, Inc.<br>625 Eden Park Drive<br>Cincinnati, OH 45202 | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiff, Saanchez West, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## PARTIES

1. West is a resident of the city of Cincinnati, Hamilton County, Ohio.

2. Defendant TRIHEALTH HOSPITAL, INC. ("TriHealth") is a domestic-incorporated non-profit that conducts business within the state of Ohio.

3. The relevant location at which the events and omissions of this Complaint took place was 625 Eden Park Drive, Cincinnati, OH 45202.

4. TriHealth is, and was at all times hereinafter mentioned, West's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C §2000e and R.C. § 4112 et seq.

5. Upon information and belief, Defendant MICHAEL JUDGE is a resident of the state of Ohio.

6. Defendant Judge is, and was at all times herein after mentioned, an owner, manager, supervisor, and/or agent of TriHealth, and as such, an employer within the meaning of R.C. §4112.02(J).

7. Defendant Judge did, and at all times hereinafter mentioned, acted directly or indirectly in the interest of TriHealth and/or within the scope of his employment at TriHealth.

8. At all relevant times referenced herein, Defendant Judge supervised and/or controlled Plaintiff's employment at TriHealth.

9. Within 300 days of the adverse employment actions described herein, West filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2023-00571 ("EEOC Charge").

10. On or about January 10, 2023, the EEOC issued and mailed a Notice of Right to Sue letter to West regarding the EEOC Charge.

11. West received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

12. West has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

13. West has properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

14. All of the material events alleged in this Complaint occurred in or around Hamilton County, Ohio.

15. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and/or (3).

16. Venue is proper pursuant to Civ. R. 3(C)(1), (2), (3), and/or (6).

17. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

18. West is a former employee of TriHealth.

19. At all times noted herein, West was qualified for her position(s) at TriHealth.

20. At all times noted herein, West was fully able to perform the essential functions of her position(s) with TriHealth, with or without a reasonable accommodation.

21. West, as an African American, is in a protected class for her race.

22. West worked for TriHealth as a medical assistant from April 11, 2022, until TriHealth unlawfully terminated West's employment on or about July 1, 2022.

23. West originally began working for TriHealth through a placement via Insite Global, a temp agency.

24. In March 2022, West had her first interview with office administrator Carrie Bright (Caucasian) and two other Caucasian participants.

25. West later had a second round of interviews with LPN Miranda Schierloh (Caucasian) and RN Lea LNU (Caucasian).

26. After these interviews, West began working for TriHealth full time as a medical assistant.

27. When West began working full time in April 2022, she trained under Schierloh.

28. West and Schierloh worked a lot of overtime as a result of Schierloh's schedule, and often ended up skipping lunch to make patient visits.

29. Around this time, West began hearing rumors about Bright's negative behavior from other coworkers.

30. Other coworkers alleged that Bright was incompetent and often changed other employees' work schedules for her own benefit. This caused multiple long-term employees to resign.

31. On or about April 22, 2022, West had a check-in meeting with Bright regarding her performance as a full-time employee so far.

32. West stated that everything at work was generally fine, but that she had been dealing with some timecard issues.

33. There had been one situation where Bright had reduced West's worked hours on her timecard in order to avoid paying West for overtime.

34. West sent an e-mail to Bright about this timecard issue and requested that it be corrected. This e-mail constituted a protected complaint.

35. The following Monday, West began talking with her coworkers about their own issues with Bright.

36. Other coworkers stated that Bright had changed their hours on their timecards as well.

37. Bright had previously stated that she was unable to fix these timecards because she was not allowed to do so, but this was not true.

38. As the conversation continued, Bright walked in. Lisa LNU (Caucasian) spoke up and said that Bright had changed her hours, which was interrupting her preparation for the doctor.

39. This led to an argument between the employees and Bright.

40. West asked if she needed to get Human Resources ("HR") involved to correct the issue.

41. Bright responded by playing the victim and asking why everyone was getting mad at her.

42. However, Bright later emailed West and told her that HR would be correcting the timecard. Lisa LNU later retired due to her issues with Bright, upon information and belief.

43. In mid-May 2022, Bright called West to discuss her working hours.

44. Good Samaritan was down one person on shift due to employees leaving, and Bright requested that West come in late the next day to work overtime hours if possible.

45. West responded that she was not allowed to do that, as her hours depended on the doctors' schedules.

46. Bright later emailed West to say that if West needed to work overtime, she should inform Bright to ensure there was communication about hours worked.

47. West did as asked and reported overtime hours as time went on, including the reason as to why her overtime hours were needed.

48. On or about June 15, 2022, West requested time off for the final week in July.

49. Bright emailed West back shortly after to say that she wouldn't approve time off until she knew that West had enough PTO, or else she would have to assign attendance points to West.

50. West sent an email in response and said that she would just take the attendance points.

51. West then sent another email stating that Bright had previously told the employees that they could flex time if they needed to cover shifts.

52. West and Bright had a phone call shortly after this email exchange, where Bright informed West that her time off was approved and that she should have enough PTO to cover it.

53. On the same day as the email exchange, West had an incident with another TriHealth employee, Name Unknown ("NU") (Caucasian).

5

54. NU asked West, "Who are you, I've never seen you before?"

55. This incident made West a little upset, as she had been working at TriHealth for many months prior. However, West gave her name and information to NU.

56. On or about June 24, West and her coworkers were each called individually into Bright's office for their performance evaluations.

57. West had her 60-day evaluation, which went fine and with no major issues.

58. However, Bright informed West that a manager saw West acting "unprofessionally."

59. Bright did not specify who this manager was nor how West had acted "unprofessionally."

60. When West asked for more information about the incident, Bright did not elaborate, only explaining that West apparently looked upset at the time.

61. West said that if the manager did not know her, how would they know that she was upset?

62. West was only able to recall the incident from June 15 as the possible source of this information.

63. Bright clarified that West was not in trouble, but that she just wanted to mention the manager saw this. The meeting ended after this, but West felt weird about ending it on such a note.

64. Later that same day, West was called back into another meeting with Bright.

65. Bright said that she forgot to mention that her manager wanted West on probation for 120 days.

66. Upon information and belief, West was the only person who would be forced into a longer-than-normal probationary period – this was thus an adverse employment action against her. Bright still did not say who this manager was.

67. West asked if TriHealth was only going to add another month to her 90-day probationary period, or if she would have to add another 120 days to her current probationary period. Bright did not give a clear answer.

6

68. West asked why this was happening, as Bright was unable to tell her what she did wrong.

69. Bright gave a phone number to West and said it belonged to the manager who requested the additional probation.

70. However, West later found out that it was just a general number for HR.

71. Upon information and belief, TriHealth did not place Caucasian employees on lengthened probationary periods without citing the grounds for doing so.

72. From June 27 to June 29, 2022, West covered for Schierloh, who was taking PTO.

73. West came in at 7:30AM all three days and clocked out at her regular time of 4:00PM. Schierloh later cancelled her time off for June 29 without telling West, and West did not find out until she saw Schierloh at work that same day.

74. Bright messaged West after her shift and asked if she was covering for anyone.

75. West answered no, and explained how she was originally covering for Schierloh, but then she came into work.

76. Bright responded that she had previously had a conversation with West about starting at the regular start time to avoid overtime.

77. Notably, West was not incurring overtime for the hours she was working that week.

78. West also reminded Bright that she did not incur any overtime that week.

79. Bright responded that this was still unacceptable, and that West had to come in when Bright told her to come in.

80. Shortly after on the same day, West called Bright. West reminded her that Schierloh had come in to work that day anyway.

81. West tried to talk, but Bright began yelling at her and told West to "work the hours I told you to work."

82. After a bit more conversation, Bright eventually hung up. Schierloh witnessed the phone conversation.

83. Bright later texted West and said that it was fine for them to talk, but that she could not accept West calling her to yell at her like that.

84. West then called Bright again, and calmly said that she had somewhere to be and that she needed that time at the end of her day.

85. Bright responded by saying West was being insubordinate and that she would report her to HR.

86. West asked why, considering she didn't work any overtime that week, just as Bright requested.

87. West told her that "this [was] getting ridiculous," and she felt that Bright was nitpicking on everything West did. This was a protected complaint.

88. West also left a message with HR to return her call regarding the incident with Bright (another protected complaint). However, HR gave West no response.

89. On or about June 30, 2022, Schierloh emailed HR director Jeff Reed (Caucasian) and stated that there needed to be a conversation with everyone involved in the incident. Reed responded to her email and scheduled a phone call that day.

90. West and Schierloh informed Reed of Bright's disparate treatment of West, going into detail about how West was often singled out and belittled by Bright compared to other Caucasian employees.

91. West and Schierloh explicitly mentioned that they felt like West was being targeted because she was African American.

92. West and Schierloh also discussed the timecard situation with Reed. This conversation constituted another protected complaint.

93. Reed responded by stating that he would follow up on the incident and investigate further.

94. On or about July 1, 2022, West came into work and worked as normal.

95. When West was headed to the elevator for lunch, Bright approached her.

96. Bright grabbed West and asked her to gather her things, stating that they needed to talk.

97. Schierloh stated that she should be present for this meeting too, but Bright told her to stay out of it.

98. Schierloh tried to interject again but West told her that it was fine, and she could attend the meeting alone.

99. West was brought into an office room with Bright and Bright's manager, Defendant Michael Judge (Caucasian).

100. Bright informed West that she also had Reed on the phone with them for this meeting.

101. Reed explained that West's employment was being terminated for insubordination.

102. West said that she did not understand why this was happening and asked if this was related to the issues with her work hours.

103. West emphasized that she had done everything that Bright had requested with respect to her schedule.

104. Reed explained that the termination was final, and then began the exit process.

105. West got up to leave, and Defendant Judge stood up in response and grabbed West's arm. This was an act of assault and unlawful restraint.

106. Bright then got in West's face. West yelled at the two of them to, "Get the fuck off of me." and complained that Bright was racist – another protected complaint.

107. Defendant Judge then physically pushed West out the door and threatened to call security.

108. As she was being pushed out the door, West dropped her earbuds in the office.

109. Bright then closed the door on West.

110. West asked if they could open the door, as she had left her stuff in the office.

111. Bright and Defendant Judge denied seeing any of her items in there.

112. After West left, she received messages from coworkers saying that the police were there for her.

113. On or about July 4, 2022, West found out that the police were looking for her. Both Bright and Defendant Judge had formally reported West to the police for the incident on July 1.

114. This was despite that Defendant Judge and Bright were the ones that unlawfully restrained and injured West. This was an act of post-employment retaliation.

115. TriHealth's termination of West's employment was an adverse employment action against her.

116. TriHealth did not have an overriding justification for West's dismissal.

117. Alternatively, TriHealth's cited reason for West's termination was pretextual.

118. West was discriminated against due to her race.

119. West was retaliated against for making complaints of discrimination in the workplace.

120. West was terminated due to her race and/or in retaliation for her opposition to discrimination in the workplace.

121. There was a causal connection between West's protected class (race) and complaints and Defendant's adverse actions taken against West.

122. Defendant's purported reason for West's termination is pretext for race discrimination and/or retaliation for opposition to discrimination.

123. As a result of being discriminated against during her employment with TriHealth, and being terminated from TriHealth, West has had and continues to accrue damages based thereupon.

10

124. As a result of TriHealth's acts and omissions, West has suffered, and will continue to suffer, damages, including economic, emotional distress and physical sickness damages.

## COUNT I: RACIAL DISCRIMINATION IN VIOLATION OF R.C. § 4112, et seq. (Defendant TriHealth Only)

125. West restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

126. West is African American, and thus is in a protected class for her race.

127. R.C. § 4112 et seq. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

128. Defendant treated West differently than other similarly situated employees based upon her race.

129. Defendant terminated West's employment without just cause.

130. Alternatively, Defendant's cited reason for West's termination was pretext.

131. At all times material herein, similarly situated non-African-American employees were not terminated without just cause.

132. West's race was a determinative factor in Defendant's decision to terminate her employment.

133. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating West differently from other similarly situated employees outside her protected class.

134. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying its employment policies in a disparate manner based on West's race.

135. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying its disciplinary policies in a disparate manner based on West's race.

136. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by terminating West based on her race.

11

137. As a direct and proximate result of Defendant's acts and omissions, West has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII**
### **(Defendant TriHealth Only)**

138. West restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

139. West is African American, and thus is in a protected class for her race.

140. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

141. Defendant treated West differently than other similarly situated employees based upon her race.

142. Defendant terminated West's employment without just cause.

143. Alternatively, Defendant's cited reason for West's termination was pretext.

144. At all times material herein, similarly situated non-African-American employees were not terminated without just cause.

145. Defendant violated Title VII by treating West differently from other similarly situated employees outside her protected class.

146. Defendant violated Title VII by applying its employment policies in a disparate manner based on West's race.

147. Defendant violated Title VII by applying its disciplinary policies in a disparate manner based on West's race.

148. Defendant violated Title VII by terminating West based on her race.

149. As a direct and proximate result of Defendant's acts and omissions, West has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: RETALIATORY DISCRIMINATION

150. West restates each and every prior paragraph of this complaint, as if it were fully restated herein.

151. As a result of the Defendants' discriminatory conduct described above, West complained about the discrimination she was experiencing.

152. Subsequent to West's reporting of discrimination against her to her employer, West's employment was terminated.

153. Defendants' actions were retaliatory in nature based on West's opposition to the unlawful discriminatory conduct.

154. Pursuant to R.C. §4112.02(I) and Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

155. West suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to Title VII and R.C. § 4112.01 et seq.

156. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of West, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT IV: CIVIL ACTION FOR CRIMINAL ACTS – UNLAWFUL RESTRAINT
### (Defendant Judge Only)

157. Plaintiff restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

158. Under O.R.C. § 2307.60(A)(1), "anyone inured in person or property by a criminal act has, and may recover full damages in a civil action," including attorneys' fees and punitive damages.

159. O.R.C § 2905.03(A) provides that "no person, without privilege to do so, shall knowingly restrain another of the other person's liberty."

160. O.R.C § 2905.03(B) provides that "no person, without privilege to do so and with a sexual motivation, shall knowingly restrain another of the other person's liberty."

161. Judge intentionally forcibly kept Plaintiff in in the office, without privilege, and without Plaintiff's consent.

162. Judge violated O.R.C. § 2905.03 et seq. when he grabbed West's arm and prevented her from leaving.

163. As a direct and proximate result of Judge's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant's is liable.

164. Judge's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendant and others from engaging in this type of unlawful conduct.

### COUNT V: INTENTIONAL TORT - FALSE IMPRISONMENT
### (Defendant Judge Only)

165. Plaintiff restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

166. Judge intentionally confined Plaintiff without her consent, violating her right to be free from restraint of movement.

167. As a direct and proximate result of Judge's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant is liable.

E-FILED 04/04/2023 4:08 PM / CONFIRMATION 1304316 / A 2301380 / COMMON PLEAS DIVISION / IFIJ

168. Judge's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendant and others from engaging in this type of unlawful conduct.

### COUNT VI:  CIVIL ACTION FOR CRIMINAL ACTS – ASSAULT.
### (Defendant Judge Only)

169. Plaintiff restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

170. Under O.R.C. § 2307.60(A)(1), "anyone inured in person or property by a criminal act has, and may recover full damages in a civil action," including attorneys' fees and punitive damages.

171. O.R.C. § 2903.13(A) provides that "no person shall knowingly cause or attempt to cause physical harm to another."

172. O.R.C. § 2903.13(B) provides that "no person shall recklessly cause serious physical harm to another."

173. Judge physically assaulted West on her final day of employment by placing his hands on West and shoving her.

174. Defendant violated O.R.C. § 2903.13 et seq. when he assaulted Plaintiff.

175. As a direct and proximate result of Judge's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant is liable.

176. Judge's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendant and others from engaging in this type of unlawful conduct.

### COUNT VII: INTENTIONAL TORT - ASSAULT
### (Defendant Judge Only)

177. Plaintiff restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

178. Judge's intentional actions caused Plaintiff reasonable apprehension of an immediate harmful or offensive contact.

179. As a direct and proximate result of Judge's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant is liable.

180. Judge's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendant and others from engaging in this type of unlawful conduct.

### COUNT VIII: INTENTIONAL TORT - BATTERY
### (Defendant Judge Only)

181. Plaintiff restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

182. Judge's intentionally caused harm or offensive contact to Plaintiff without her consent.

183. As a direct and proximate result of Judge's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant is liable.

184. Judge's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendant and others from engaging in this type of unlawful conduct.

### DEMAND FOR RELIEF

WHEREFORE, West demands from Defendant the following:

  a) Issue a permanent injunction:
   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;
   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;
   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal

16

       responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv.   Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

   v.   Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge West's personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate West for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for West's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

17

Respectfully submitted,

  /s/ Evan R. McFarland
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
     Trial Attorney
**SPITZ, THE EMPLOYEE'S LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

Attorneys for Plaintiff Saanchez West

## **JURY DEMAND**

Plaintiff Saanchez West demands a trial by jury by the maximum number of jurors permitted.

  /s/ Evan R. McFarland
Evan R. McFarland (0096953)

18